IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ROBIN TUCKER, | * |
| Plaintiff, | * |
| v. | *   Civil No. TJS-21-2708 |
| MICHAEL BONSBY HEATING AND AIR CONDITIONING, LLC, | * |
| | * |
| Defendants. | |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

Pending before the Court is the Motion to Dismiss (ECF No. 40) filed by Defendant Michael Bonsby Heating and Air Conditioning, LLC ("Bonsby").[1] Having considered the submissions of the parties (ECF Nos. 40, 49 & 54), the Court finds that a hearing is unnecessary. *See* Loc. R. 105.6. As stated in the Court's letter order dated August 11, 2022 (ECF No. 56), the Motion to Dismiss will be converted into a motion for judgment on the pleadings under Rule 12(c) and that motion will be granted in part and denied in part.[2]

**I.   Background**

Plaintiff Robin Tucker ("Tucker") originally filed this lawsuit against Bonsby in the Circuit Court for Montgomery County, Maryland. ECF No. 3. Bonsby timely removed the case to this Court on the basis of federal question jurisdiction. ECF No. 1; *see* 28 U.S.C. §§ 1441, 1446. Thereafter, Bonsby filed an answer to the Complaint (ECF No. 7) and a scheduling order was

---

[1] By the consent of the parties, this case was referred to me for all proceedings under 28 U.S.C. § 636(c). ECF No. 17.
[2] Because the Court will remand the only viable claim to state court, the Motion to Stay Discovery (ECF No. 50) will be denied as moot. The Court does not consider whether and to what extent discovery should be reopened in state court.

entered (ECF No. 13). During the discovery period, and with leave of Court, Tucker filed an Amended Complaint, in which Tucker dismissed three of her claims against Bonsby and amended some allegations of her remaining claims. ECF No. 29. Most recently, and again with leave of Court, Tucker filed a Second Amended Complaint (ECF No. 34). In doing so, Tucker dismissed one of her claims against Bonsby and amended some allegations of her remaining claims. *Id.* In response, Bonsby filed the Motion to Dismiss, arguing that Tucker had failed to state any claims upon which relief can be granted. ECF No. 40. Because Bonsby had already answered a previous version of Tucker's Complaint that asserted some of the same claims in the Second Amended Complaint, *see* ECF No. 7, however, Bonsby's motion to dismiss under Rule 12(b)(6) was untimely. Fed. R. Civ. P. 12(b) (explaining that a "motion asserting any of [the] defenses [set forth in Rule 12(b)] must be made before pleading if a responsive pleading is allowed"). Accordingly, the Court ordered Bonsby to file an answer to the Second Amended Complaint so that the pleadings could be considered closed and the Motion to Dismiss could be converted into a motion for judgment on the pleadings under Rule 12(c). ECF No. 56.

Now that Bonsby has filed its answer (ECF No. 57), the pleadings are closed and the Court will convert Bonsby's Motion to Dismiss into a motion for judgment on the pleadings. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (explaining that, under Rule 12(h), an untimely motion to dismiss under Rule 12(b)(6) may be treated as a motion for judgment on the pleadings under Rule 12(c)). This procedural change has little practical effect because the same standard applies to motions for judgment on the pleadings under Rule 12(c) and motions to dismiss for failure to state a claim under Rule 12(b)(6). *Id.* Bonsby's motion for judgment on the pleadings ("Motion") is now ripe for decision.

**II.     Discussion**

   **A.     Legal Standard**

Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, [and not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards*, 178 F.3d at 243. A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks omitted). A complaint must consist of "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). When considering a motion to dismiss, a court must accept as true the well-pled allegations of the complaint and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). While a court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint generally "does not need detailed factual allegations." *Id.* So long as the factual allegations are "enough to raise a right to relief above the speculative level," the complaint will be deemed sufficient. *Id.* A "well-pleaded complaint may

3

proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

    **B.**    **Choice of Law**

Although this case is before this Court based on federal question jurisdiction, two of Tucker's claims (Counts I and III) derive from state law, over which the Court has supplemental jurisdiction. "When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state." *Green v. Obsu*, No. ELH-19-2068, 2022 WL 2971950, at *11 (D. Md. July 27, 2022) (citing *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); *Baker v. Antwerpen Motorcars, Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011)). Maryland adheres to the *lex loci delicti* rule to determine the applicable law for tort claims. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744 (2000). Under this rule, the "substantive tort law of the state where the wrong occurs governs." *Hauch v. Connor*, 295 Md. 120, 123 (1983). For contract claims, Maryland applies the law of the state in which the contract was formed ("*lex loci contractus*"), unless the parties to the contract agreed to be bound by the law of another state. *State Auto. Mut. Ins. Co. v. Lennox*, 422 F. Supp. 3d 948, 961 (D. Md. 2019) (citing *Cunningham v. Feinberg*, 441 Md. 310, 326 (2015)). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Konover Prop. Tr., Inc. v. WHE Assocs.*, 142 Md. App. 476, 490 (2002).

The parties mainly cite Maryland state law in their briefs. Still, it appears that District of Columbia substantive law applies to Tucker's negligence claim (because the allegedly negligent acts were committed in the District of Columbia). As for the implied breach of warranty claim, the Court is not certain whether Maryland or District of Columbia law applies, because it is unclear

where the contract at issue was formed. Still, as discussed below, the relevant laws of the two jurisdictions are identical on all points material to the resolution of this Motion, both as to the negligence claim and as to the breach of implied warranty claim.

### C. Allegations of the Second Amended Complaint

At this stage, the Court accepts the allegations of the Second Amended Complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to Tucker. In August 2017, Tucker contacted Bonsby to replace the home air conditioning unit and furnace at a property she owned, located at 5227 Chillum Pl. NE, Washington, DC (the "property"). ECF No. 36 ¶ 7. A Bonsby employee visited the property in August 2017 to collect information and to give a cost estimate to Tucker. *Id.* ¶ 10. Bonsby did not perform the following tests at any time: blower door test, duct leakage test, or external static pressure test. *Id.* ¶¶ 11-12. In addition, "Bonsby did not consider the number of people living in the home, the age of the home, the state of the windows in the home, [or] the state of the air duct system in the home." *Id.* ¶ 11. Bonsby informed Tucker that "the ducts in the property were leaking air and proposed an application of a duct sealing product known as Aeroseal." *Id.* ¶ 17.

On August 15, 2017, Tucker agreed to the application of Aeroseal and contracted with Bonsby for the installation of a home air conditioning unit at the property.[3] *Id.* ¶¶ 19-23; *see also* ECF No. 3 at 19-22 (Tucker did not append a copy of the contract to her Second Amended Complaint but it is included as an exhibit to the complaint she filed in state court). Later that month, Bonsby completed the installation of the contracted HVAC system. ECF No. 36 ¶ 27.

---

[3] The Court will refer to the air conditioning and heating equipment generally as the HVAC system. In the Second Amended Complaint, Tucker alleges specifically that she contracted with Bonsby "for the installation of a new home air conditioning unit, a new gas furnace, an indoor evaporator coil, a thermostat, a condensate pump, and Aeroseal application." ECF No. 36 ¶ 23.

About one year later, on August 25, 2018, tenants who were living at the property informed Tucker of water damage on the kitchen ceiling. *Id.* ¶ 30. Tucker inspected the water damage and observed a hole in the kitchen ceiling directly under an air duct. *Id.* ¶ 32. It appeared to her that moisture dripping from the air duct was causing the water damage and ceiling collapse. *Id.* ¶ 32. Tucker contacted Bonsby, who sent an employee to repair the water damage. *Id.* ¶¶ 33-34. This employee installed insulation around the duct where the water damage occurred. *Id.*

One week later, on September 1, 2018, Tucker's tenants alerted her to water damage in the property's basement ceiling. *Id.* ¶ 35. Tucker inspected the water damage and saw that a 1-2 foot portion of the ceiling in the basement had collapsed. *Id.* ¶¶ 36-37. The hole in the ceiling was directly under a duct. *Id.* Moisture dripping from the duct had caused the water damage and ceiling collapse. *Id.* ¶ 37. Tucker again contacted Bonsby, who sent an employee to assess the damage. *Id.* ¶ 38. Upon inspection, Bonsby's employee stated that the basement ceiling was too close to the joists and studs to install insulation. *Id.* ¶ 39. Bonsby did not repair the damage to Tucker's satisfaction. *See id.* ¶¶ 40-41. Later in September, Tucker hired McMurray's Heating and AC to visit the property, assess the damage, and estimate the costs of repair. *Id.* ¶ 42. A McMurray's employee told Tucker that the water damage to the ceiling at the property had been caused by condensation on the outside of the ducts ("sweating ducts") but was uncertain how best to remedy the situation. *Id.* ¶¶ 44-45.

Two years later, in August 2020, the tenants living at the property told Tucker that mold was growing on the living room ceiling in an area that had experienced water damage. *Id.* ¶ 46. The tenants cleaned the mold and Tucker hired a certified mold testing firm to conduct internal and external mold tests at the property. *Id.* ¶ 47. The test results showed the presence of stachybotrys ("black mold") on and near the basement air ducts. *Id.* ¶ 48. The mold testing firm

recommended mold remediation. *Id.* Tucker hired another company to remediate the mold problem on the property. *Id.* ¶ 49.

In September 2020, Tucker emailed a complaint to Bonsby about the water damage and mold at the property. *Id.* ¶ 50. Bonsby's proprietor visited the property to investigate and take pictures. *Id.* ¶ 52. The proprietor told Tucker that the duct condensation and resulting damage was caused by the number of occupants at the property, poor window insulation, the lack of vent fans in the bathrooms, and the general humidity in the house. *Id.* ¶ 53. According to Tucker, this explanation of the cause of the water damage was incorrect, and in any event, Bonsby was aware of all the information before it installed the HVAC system and applied the Aeroseal at the property. *Id.* ¶ 54-55. Tucker told the proprietor that "she never had any problems with duct condensation or precipitation prior to Bonsby's installation of a new air conditioning unit and application of Aeroseal." *Id.* ¶ 56. He responded that he had heard the same from others and that she should have had a blower door test done before installing a new HVAC system. *Id.* ¶ 59. Tucker asked the proprietor if insulating the air ducts on the property would solve the problem, at which point he became upset and replied that "old houses cannot be properly insulated." *Id.* ¶¶ 61-62. The proprietor denied that Bonsby was responsible for any damage to the property. *Id.* ¶ 64.

Tucker subsequently spent over $2,000 in an attempt to mitigate future damage at the property. *Id.* ¶ 65. She eventually had a blower door test performed at the property. *Id.* ¶ 67. The results from this test showed that the duct leakage at her house between 760-830% above the recommended leakage rates. *Id.* ¶ 68. Tucker alleges that Bonsby should have performed the blower door test before applying the Aeroseal, and should have insulated the air ducts before installing the HVAC system. *Id.* ¶¶ 70-72.

D.     **Breach of Implied Warranty of Fitness for Particular Purpose**

In Count I, Plaintiff claims that Bonsby is liable of breach of implied warranty of fitness for particular purpose. ECF No. 36 ¶¶ 73-84. To state a claim for breach of implied warranty of fitness for a particular purpose, a plaintiff must plead that (1) the seller had reason to know the buyer's particular purpose for the goods; (2) the seller had reason to know that the buyer was relying on the seller's skill or judgment to furnish appropriate goods; and (3) the buyer did, in fact, rely on the seller's skill or judgment. *Ford Motor Co. v. General Acc. Ins. Co.*, 365 Md. 321, 342-43 (2001); *Metromont Corp. v. Allan Myers, L.P.*, No. DKC-18-3928, 2021 WL 3367772, at *15 (D. Md. Aug. 3, 2021); *see also Erie Ins. Co. v. W.M. Barr & Co., Inc.*, 523 F. Supp. 3d 1, 11 (D.D.C. 2021); *Mero v. City of Segway Tours of Washington DC, LLC*, No. 11-0817 (ABJ), 2012 WL 13059946, at *5 (D.D.C. June 7, 2012) (citing *Green v. Northeast Motor Co.*, 166 A.2d 923 (D.C. 1961) and *Buchanan v. Dugan*, 82 A.2d 911, 914 (D.C. 1951)). The particular purpose "must be distinguishable from the normal use of the goods" and "must be peculiar to the buyer as distinguished from the ordinary or general use to which the goods would be put by the ordinary buyer." *Ford*, 365 Md. at 343.

Here, Tucker alleged that she entered a contract with Bonsby for the installation of a new HVAC unit and the application of Aeroseal to effectively cool and heat the property, without damaging it. ECF No. 36 ¶¶ 76-81. The heating and cooling of a home, without causing damage to the home, is the normal purpose for which a buyer purchases an HVAC system. *See generally Evans v. Daikin N. Am., LLC*, No. 17-10108-RGS, 2019 WL 438340, at *6 (D. Mass. Feb. 4, 2019) ("Since it is undisputed that an HVAC system is used to heat and cool a home and the [plaintiffs] used it for that very purpose, they cannot claim a breach of the implied warranty of fitness."). And, as Tucker alleges, the normal purpose of applying the Aeroseal product to air ducts is to seal ducts

8

that are leaking air. ECF No. 36 ¶ 17. Tucker purchased the Aeroseal product to seal the air ducts at the property. *Id.* ¶ 81. Because Tucker does not allege that she contracted for the installation of the HVAC system and the application of Aeroseal for a particular purpose, her claim for breach of implied warranty of fitness for a particular purpose fails. Alternatively, as much as Tucker has alleged that her reasons for purchasing the HVAC system and the Aeroseal application were solely to avoid damaging the property, and not for the property to be effectively cooled and heated, the Court finds such a claim implausible on its face. For these reasons, the Motion is granted as to Tucker's breach of implied warranty claim (Count I).

### E. Violation of Magnuson-Moss Warranty Act

In Count II, Tucker claims that Bonsby is liable for violating the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq*. ECF No. 36 ¶¶ 85-101. The MMWA provides a federal remedy for failure to comply with a warranty, but only after a plaintiff has first established a breach of warranty under state law. *Singh v. Lenovo (U.S.) Inc.*, 510 F. Supp. 3d 310, 320-21 (D. Md. 2021) (citing *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 545 (D. Md. 2011)). Tucker alleges that Bonsby "has failed to comply with its express and implied warranties with regard to the new home air conditioning unit and Aeroseal duct sealing product," as alleged in the Second Amended Complaint. ECF No. 36 ¶¶ 87, 92. The Court has already found that Tucker has not stated a claim upon which relief can be granted for breach of implied warranty. And Tucker does not allege the existence of any express warranty in her Second Amended Complaint.[4] Where, as here, a plaintiff's

---

[4] At most, Tucker refers to allegations that are not actually contained in the Second Amended Complaint. ECF Nos. 36 ¶¶ 87 ("As alleged above, Defendant has failed to comply with its express . . . warranties . . . ."), 92 ("Defendant has breached its expressed warranties as alleged herein . . . ."). Contrary to Tucker's allegations in paragraphs 87 and 92, nowhere in the Second Amended Complaint does she make any allegation about express warranties. A review of Plaintiff's redline copy of the First Amended Complaint and Second Amended Complaint (ECF Nos. 31-1 & 36-1) shows that all previous mentions of express warranties were deleted from the

MMWA claim is predicated on a non-viable breach of implied warranty claim, the MMWA claim must be dismissed for failing to state a claim upon which relief can be granted. *See Thomas v. Ford Motor Co.*, No. 5:13-01417-JM, 2014 WL 1315014, at *4 (D.S.C. Mar. 31, 2014) (citing Walsh v. Ford Motor Co., 807 F.2d 1000, 1013–14 (D.C.Cir.1986)) (explaining that "[c]laims under the MMWA are subject to the same pleading requirements and defenses as the state law warranty claims because the claims under the MMWA derive from state law," and that a plaintiff's claim under the MMWA derives from a claim for breach of warranty under state law).

### F. Negligence

In Count III, Tucker claims that Bonsby is liable for negligence. ECF No. 36 ¶¶ 102-109. "As a general matter, a claim for negligence in the District of Columbia has four elements: (1) the defendant owed a duty to the plaintiff, (2) the defendant breached its duty, (3) and that breach was the proximate cause of (4) damages sustained by the plaintiff."[5] *Busby v. Cap. One, N.A.*, 772 F. Supp. 2d 268, 283 (D.D.C. 2011) (citing *Powell v. Dist. of Columbia*, 634 A.2d 403, 406 (D.C. 1993)).

Tucker alleges that Bonsby breached its duty to exercise due care in installing the HVAC system and applying the Aeroseal product. She alleges that Bonsby failed to "perform the appropriate and required tests, including but not limited to external static pressure test or blower door tests." ECF No. 36 ¶ 104. Tucker generally alleges that Bonsby breached its duty to exercise due care by installing an air conditioning unit that damaged her property. *Id.* ¶ 105. Had Bonsby

---

Second Amended Complaint. Presumably, the two mentions of the "express warranties" and "expressed warranties" in Count II should have been deleted as well. In any event, Tucker has not plausibly alleged a breach of any express warranty; she has not even identified the nature of the express warranty in the Second Amended Complaint.

[5] As explained above, although the parties have not briefed the issue, the Court believes that District of Columbia law applies to Tucker's negligence claim. Even so, the result would be the same under Maryland law.

performed the appropriate tests, taken into account the relevant factors about the property, and adequately insulated the air ducts, Tucker claims, the damage would not have occurred.

Before Bonsby installed the HVAC system and applied the Aeroseal product to Tucker's air ducts, Tucker "never had any problem with duct condensation or precipitation." ECF No. 36 ¶ 56. But after Bonsby installed the new HVAC system and applied the Aeroseal, Tucker's property began experiencing water damage. *Id.* Upon inspection of the water-damaged areas, Tucker and others observed that the damage was caused by condensation dripping from the air ducts. The Court finds that Tucker has stated a plausible claim for negligence against Bonsby. Put simply, before Bonsby installed the HVAC system and applied the Aeroseal, Tucker's property did not experience water damage under the air ducts. After Bonsby completed its work, Tucker's property experienced significant wager damage under the air ducts. Of course, Tucker may be mistaken and evidence obtained in discovery may show that the damage to Tucker's' property is not the fault of Bonsby. But the Court is not considering Bonsby's motion as a motion for summary judgment. At this stage, the Motion will be denied as to the negligence claim.

### G. Supplemental Jurisdiction

This case was removed to federal court based on federal question jurisdiction. Because the Court has dismissed Tucker's MMWA claim, leaving only a state law negligence claim, the Court must decide whether to exercise supplemental jurisdiction over the remaining state-law claim. Supplemental jurisdiction is governed by 28 U.S.C. § 1367.

Under § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." *See Little v. Mayor & City Council of Ocean City*, No. ELH-18-360, 2019 WL 4689238, at *29 (D. Md. Sept. 26, 2019). The Fourth Circuit has stated that "trial courts enjoy wide latitude in

determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). Because the Court has dismissed the only federal claim (Count II), the Court will exercise its discretion to remand Tucker's remaining state-law negligence claim (Count III) to Maryland state court. *See, e.g., Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 500 (D. Md. 2005) ("Because the court will dismiss the claims over which it has original jurisdiction, the court will decline to exercise supplemental jurisdiction over the remaining state law claims."). This matter will be remanded to the Circuit Court for Montgomery County, Maryland.

### III. Conclusion

For these reasons, Bonsby's Motion to Dismiss (ECF No. 40), construed as a motion for judgment on the pleadings is **GRANTED IN PART** and **DENIED IN PART**. The Motion is granted as to Count I and Count II of the Second Amended Complaint (ECF No. 36). These claims are **DISMISSED WITH PREJUDICE**. The Motion is denied as to Count III. This matter is **REMANDED** to the Circuit Court for Montgomery County, Maryland.

The Motion to Stay Discovery (ECF No. 50) is **DENIED AS MOOT**.

A separate Order follows.


September 7, 2022                                       /s/
Date                                                    Timothy J. Sullivan
                                                        United States Magistrate Judge